And that would be in the interest of T.D. and B.D., minors, versus David, D., and Kariana, D., 515-0030. Mr. Warren? Yes. You may proceed when you're ready, sir. May it please the Court and Counsel, I think the best way to summarize why I believe that this case should be reversed and sent back at least to determine whether or not there are sufficient facts is that it's not possible from the record as it now stands to determine what these parents supposedly did as parents in relation to the children that makes them unfit or that leads to a situation where the children should be taken from them permanently. Now, you've used the word unfit and taken from them permanently. Yes. So we have two different legal issues here. Sure. We have unfit and we have the adoption issue, termination. Correct. Right? Determination. So you're arguing... I'm arguing that there's not sufficient evidence in this record for either one of those two things. Okay. I thought that the parents stipulated to a finding of abuse. Way back at the beginning, way back early on, because this thing went on for several years, about three years, 12, 13, and 14, toward the end of 14. And way back there, the DCFS was telling the parents and counsel that we want to work with you to get these children back in the home, that that is our plan and that is our intention. That's what we're doing. And at that point, there was that stipulation. I think the fact that it was in that context, that this stipulation is not really giving up their chances to get the kids back. I'm not so sure it was a good idea to stipulate, but there it is in the record. And they moved ahead to the counseling and so forth that was recommended by DCFS and became something of a controversy. Well, more than something of a controversy, it became central. Well, counsel, is it true that the original shelter care was based upon abuse and it was not a contested hearing? I don't think it was a contested hearing. It was the original shelter care. There was a letter from a doctor that essentially focused on the psychological findings in relation to these parents. And they did not contest that. They stipulated to the shelter care, is that right? That's right. And then at the adjudicatory hearing, isn't it also true that they changed it from abuse to neglect and that they then stipulated to that, is that right? That is true. That is true. I think that even though the record doesn't show any particular conduct on the part of the parents that amounts to abuse and neglect, I don't think it does, they did stipulate to them. Would that be in the original adjudicatory order, what the factual basis was? The factual basis, the only factual basis I'm aware of are the opinions of the psychological people that these parents had certain problems. And I'm differentiating that from findings about something they did wrong in relation to the children that constituted abuse or neglect and so forth. And, of course, I pointed out in the brief there really is no evidence in this record that they beat the kids or injured the kids or molested them or harmed them in any particular way or that they failed to provide food and clothing and shelter or medical care and education. I mean there's no finding of any of these particular things. The factual basis, go ahead. I'm sorry to interrupt, but you don't have to have a child who's sexually abused, you can have a child who's emotionally abused. And the state, as Justice Moore just indicated, on the second amended petition, alleged a substantial risk of emotional impairment. They took out the abuse allegations. And these folks stipulated to those allegations, right? So we're talking about emotional abuse, including one of the girls who was, or maybe both, were sexually abused by a prior family member, but was not receiving any emotional support for that. I'm not sure I understand either yet what the emotional abuse was, except from the letter of the social worker about tumultus. But, nevertheless, the clients admitted to the petition, so I think we're past that. There were, I think that that relates, if I'm stuck with that, and that is the fact, and if I'm stuck with that and that's the answer, look, they stipulated to it, so even though there's nothing in the record that shows any real misconduct on their part- I didn't say that, but you might be stuck with it. Well, I don't think- I understand your concerns. Yeah, I mean that's my argument, and I understand that- I didn't mean to minimize it. There are two sides of the case, but no, it's not like everybody is agreeing with me on that point, but I think the record, even though it's very lengthy, doesn't show that particular kind of thing. If, as to the neglect or even the unfitness, if that stipulation is something that I can't go behind, then there it is. But there was a dispute as to the termination of rights. At least it didn't stipulate to that. And that, of course, relates to whether they made sufficient progress because that was the grounds on which they were- those rights were terminated. And the matter of sufficient progress has to go back to previous findings or stipulations or whatever it would be. Since none of those things, I think, have to do with the specific acts of misconduct and so forth, the progress couldn't be defined in this particular case of you have to stop beating the children or starving them or whatever, since that wasn't part of the picture anyway. It's something- I find it vague. There's not enough emotional- yeah, there's not enough emotional support. There wasn't any allegation that you didn't take- there's an allegation that you, Mr. and Mrs. Parent, didn't get as much counseling as we think you should get, but there's no allegation that you, Mr. and Mrs. Parent, didn't provide necessary medical or psychological care for your children. I mean, you didn't do anything to them or neglect them in that manner. And so we get down to whether or not they progressed, and you get into what strikes me as a pretty vague matter of what's sufficient to- what's sufficient progress, since if I'm right, that there's no specific misconduct except maybe not providing enough emotional support without any specification as to how they were not supplying that emotional support. They obviously got some counseling, but they didn't get all the counseling that was recommended to them and didn't cooperate to the satisfaction of the DCFS, and then the court made its finding that you haven't made enough progress. They report that you haven't made enough progress, and so we're terminating your rights. Well, counsel, didn't they send a letter saying they weren't going to do the counseling they were asked to do? I don't know that they sent an e-mail or a letter or something. There's-actually, I don't remember a specific letter refusing, but there certainly was testimony and evidence, and maybe it was there, I just don't remember that it was there. But I concede that they did not do all the counseling or do all the visits that the DCFS and some of the psychological people had recommended that they do. So whether they specifically sent a letter saying they weren't going to do it, they did not do everything that was recommended to them to do. So that's some inaction on their part, and I think what it leaves here is no showing that they did anything actively to harm these children, that they didn't do certain things that were recommended to them to do, and so that this whole case at whatever level could theoretically happen and they'd lose their kids. And understandably would not ever really know what did we do, what supposedly did we do to these kids that caused all this to happen. And that really summarizes my position. So they never-I mean, I'm not sure I understand their position. Their position is- They don't know why they're losing their children? Well, they know-they don't know what they did wrong in relation to the kids. Are they capable of understanding that? Oh, sure they are. With their emotional disabilities? I mean, and all the findings are that these-they're not vegetables. I mean, they are-and in fact, I think that the tests show that they're intelligent people and so forth, intelligent, articulate people, and they know that there was a finding in court that they didn't get all the counseling that had been recommended to them, and from their point of view, that's why the kids were taken away from them, that they didn't go in on their own-I mean, not on their own, that you go in and following the recommendations and getting all the treatment and counseling that was recommended to them. What they don't know in the record, I think, is other than this matter of not providing enough emotional support without any specificity on what it is that you're doing there at home that's not providing that emotional support, there's no allegations of any active misconduct. I think there's one thing in there that they didn't make up their minds for three months whether or not which bedroom in the home this one girl should have because she didn't want the one in the basement, and it took them three months to decide without any real finding of how that harmed her or why that was a showing of neglect. But other than that, it's all- The mother was diagnosed with histrionic personality disorder. That's right. And I was impressed by the fact that this sociologist or physician was talking about how tumultuous this home was. You don't consider those kinds of things active, neglectful positions? Here's what I'm saying. A tumultuous home doesn't sound good to me, and histrionic personality sounds like over-dramatizing things and so forth. But that's a conclusion, that's a tumultuous home. Does it mean that it was loud? I can form a picture of what a tumultuous home might be if anybody could. But I don't know any facts from this record as to what's going on. Are they screaming at each other? Are they throwing things? I mean, there are activities that you can imagine, but they're not in this record. What's making that home tumultuous? Who's doing what to whom? And I don't think there's a showing in this record of that kind of thing. So we don't really know what those facts are. Those conclusions don't sound so good, I agree. Tumultuous home, what's the term, what kind of personality? Histrionic personality. I mean, obviously, I know a lot of people in the legal profession who have what I call histrionic. I hope I don't have it, but I mean. I agree with you. But, I mean, without making light of it, I can also imagine some kind of conduct that's more than just kind of making fun of somebody for being a little overdramatic, to know what the specifics of this is so we know why these parents are such bad parents. Okay, thank you very much.